## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DEBORAH DAILEY | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 16-1331 |
| | : | |
| CITY OF PHILADELPHIA, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                    **October 2, 2019**

The Chief Deputy Prothonotary of Philadelphia's court system contributed part of her income into the City's retirement system for over three decades. In Spring 2014, she abused the court's credit card to pay over $73,000 of her son's debts. The court fired her and pressed criminal charges. She plead guilty to a third-degree felony theft and paid back the stolen funds. The City's Pension Board then disqualified her from her pension based on her conviction on two specific grounds in the Retirement Code: theft of funds of the City, or official agency of the City, or agency, engaged in performing any governmental function for the City or the Commonwealth and "malfeasance in office or employment." She immediately sued both here and in state court claiming this language is unconstitutionally vague and the penalty acts an illegal forfeiture or taking of her property interest. We abstained to allow the state court to interpret the terms of the City's legislation. The state appellate court defined the "malfeasance" as including her admitted theft and upheld her pension ineligibility. Finding we may decide the issues under federal law, we hold the "malfeasance" language is not void for vagueness under the Fourteenth Amendment and the loss of the full pension net of her contributions is not an improper forfeiture under the Eighth Amendment, an improper taking under the Fifth Amendment, or an arbitrary deprivation of property and excessive punitive sanction under the Fourteenth Amendment. We grant the City's motion for summary judgment.

## I. Undisputed Facts[1]

Deborah Dailey began working as a stenographer for the First Judicial District of Pennsylvania in 1979.[2] For the next thirty-four years she worked for the First Judicial District ultimately becoming the Chief Deputy Prothonotary and Clerk of Courts.[3] Ms. Dailey became a member of "Plan J" of the City of Philadelphia Public Employees Retirement System[4] upon employment[5] and made contributions into the Retirement System.[6] The Retirement System contains several plans for retirement, disability, and incidental death benefits for the City's employees and their survivors and beneficiaries.[7] The Retirement Code sets the terms of eligibility for retirement benefits and contributions into the Retirement System by the City and members.[8] The Retirement Code also sets terms for disqualification from receiving retirement or any other benefits from the Retirement System.[9] If a member "separates from service for any cause other than death, disability or retirement," her total contributions made into the Retirement System "shall … be repaid … without interest."[10]

Between February and May 2014, Ms. Dailey admittedly stole over $73,000 from the First Judicial District by using its credit card without authorization to pay bills for her son.[11] The First Judicial District terminated Ms. Dailey's employment on May 14, 2014 when it learned of Ms. Dailey's conduct.[12] Ms. Dailey repaid the First Judicial District in full before pleading guilty on February 18, 2015 to theft by unlawful taking or disposition – movable property, a third-degree felony under Pennsylvania law.[13] A judge sentenced Ms. Dailey to thirty months' probation and payment of court costs.[14]

Four months after entering her guilty plea, Ms. Dailey applied for optional early retirement benefits under Philadelphia's Retirement System.[15] On September 17, 2015, the Pension Board voted to "permanently disqualify [Ms. Dailey's] pension eligibility and suspend [her] pension

2

benefits,"[16] notified Ms. Dailey of her disqualification for pension eligibility under Retirement Code Section 22-1302(1)(a)(.4) and (.5) based on her guilty plea to theft of movable property, and advised her of her right to a hearing before a panel of the Pension Board to challenge its decision.[17] Under the terms of the Retirement Code, the City will return contributions made by Ms. Dailey into the Retirement System without interest.[18]

## A. Retirement Code § 22-1302(1)(a)(.4) and (.5).

The Pension Board disqualified Ms. Dailey under Sections 22-1302(1)(a) (.4) and (.5) of the Retirement Code:

"Notwithstanding any other provision of this Title, no employee ... shall be entitled to receive any retirement or other benefit or payment of any kind except a return of contribution paid into the Retirement System, without interest, if such employee:

(a) pleads or is finally found guilty, or pleads no defense, in any court, to any of the following:

...

(.4) Theft, embezzlement, willful misapplication, or other illegal taking of funds or property of the City, or those of any official agency of the City, or agency, engaged in performing any governmental function for the City or the Commonwealth;

(.5) malfeasance in office or employment; ...."[19]

Ms. Dailey challenges the constitutional validity of subsections (.4) and (.5). She claims Section 22-1302(1)(a) as applied to her violates the Excessive Fines Clause of the Eighth Amendment; as applied to her is an arbitrary deprivation of property and an excessive punitive sanction in violation of the Due Process Clause of the Fourteenth Amendment; subsection (.4), as applied to her, and subsection (.5), both on its face and applied to her, are void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment; and Section 22-1302(1)(a) as applied to her violates the Takings Clause of the Fifth Amendment.[20]

3

### B. Ms. Dailey's administrative appeal of the Pension Board's September 17, 2015 decision.

Ms. Dailey appealed the Pension Board's September 17, 2015 decision. A three-member panel of the Pension Board held a hearing on January 13, 2016. The hearing panel issued findings of fact and conclusions of law in support of its determination.[21] The hearing panel found Ms. Dailey, represented by counsel, "offered minimal testimony" to explain her use of the credit card, and did not call any witnesses or introduce documents into evidence.[22]

The Pension Board concluded Ms. Dailey's disqualification from the Retirement System should be upheld because violations of sections (.4) and (.5) require disqualification, focusing on the language "*no* employee ... *shall be entitled* to receive any retirement benefit or other benefit of any kind" upon conviction of an applicable offense while in office.[23] The Pension Board concluded to receive a pension "Retirement System members must satisfy multiple conditions precedent: years of service, payment of contributions, vesting, and age" and "is also contingent upon the requirement that the employee not have engaged in certain criminal conduct in office, as set forth in Section 22-1302."[24]

Determination of pension eligibility in the Retirement System is vested in the Pension Board. The Pension Board determined "commission of an applicable offense in office by a public employee is a breach of the public trust and of the public employment contract, which severs entitlement to pension benefits."[25] The Pension Board found Ms. Dailey's guilty plea to theft of movable property from the First Judicial District while in office constituted a breach of the public employment contract, triggered the mandatory provisions of Section 22-1302, and rendered her ineligible to receive pension benefits.[26]

The Pension Board considered Ms. Dailey's constitutional arguments made at the hearing claiming Section 22-1302(1)(a)(.4) does not apply to the First Judicial District because it is not the

4

"City" or an "agency"; Section 22-1302(1)(a)(.5) does not apply because Ms. Dailey did not plead guilty to "malfeasance"; disqualification constituted an excessive fine in violation of the Eighth Amendment; malfeasance in subsection (.5) is unconstitutionally vague; and the Board failed to provide procedural due process.[27] The Pension Board rejected each argument, and, after considering Ms. Dailey's arguments made at the hearing and briefing, the three-member hearing panel recommended the denial of Ms. Dailey's appeal.[28]

At its regularly scheduled meeting on February 25, 2016, the Pension Board confirmed the recommendation of the hearing panel, denied Ms. Dailey's appeal, and "approved to permanently disqualify [Ms. Dailey] from pension eligibility ...."[29] On February 26, 2016, the Pension Board advised Ms. Dailey of her right to appeal its decision to the Court of Common Pleas.[30]

### C. Ms. Dailey sued the City here and in the Philadelphia County Court of Common Pleas challenging the Pension Board's disqualification.

Four weeks later, Ms. Dailey filed her complaint here and, the next day, filed an appeal from the Pension Board's decision to the Court of Common Pleas of Philadelphia County.[31] In an amended complaint here, Ms. Dailey challenges Section 22-1302(1)(a) of the Code under 42 U.S.C. Section 1983[32] alleging it violates the Excessive Fines Clause of the Eighth Amendment (Count I); is an arbitrary deprivation of property and an excessive punitive sanction under the Due Process Clause of the Fourteenth Amendment (Count II); subsection (.4), as applied to her, and subsection (.5) both on its face and as applied to her is void for vagueness and fails to provide sufficient notice under the Due Process Clause of the Fourteenth Amendment (Count III); and Section 22-1302(1)(a), as applied to her, violates the Takings Clause of the Fifth Amendment (Count IV).[33] Ms. Dailey asks we find the City violated § 1983; award compensatory damages to make her whole for past and future monetary harm with prejudgment interest; award compensatory

5

damages for emotional harm; costs and attorney's fees; and any other appropriate damages and relief.

In May 2016, Ms. Dailey moved for partial summary judgment simultaneously with her first amended complaint on all claims except for her Fifth Amendment Takings Clause claim.[34] At the time, Ms. Dailey maintained two actions; one here and one in the Court of Common Pleas of Philadelphia County both challenging the Pension Board's decision to disqualify her from the Retirement System. At the same time, the City moved to dismiss this case arguing we should abstain under *Younger*[35] to avoid interfering in the ongoing state proceeding implicating important state interests and where Ms. Dailey could adequately litigate her federal constitutional claims.[36] The City also argued even if we did not abstain under *Younger*, Ms. Dailey fails to state constitutional claims.

After considering the parties' briefing and oral argument, we decided to abstain under *Pullman*[37] from deciding the constitutionality of the Retirement Code pending the state court's determination of the meaning of subsections (.4) and (.5).[38] In deference to Pennsylvania's courts, we invoked *Pullman* abstention and put the matter on our suspense docket until the state courts resolved the issue of whether the Pension Board erred in applying Retirement Code sections 22-1302(1)(a)(.4) and (.5) to disqualify Ms. Dailey from pension eligibility.

## D. Ms. Dailey appealed the Pension Board's decision to the state courts, we continued to abstain under *Pullman*, and Ms. Dailey facially reserved her federal constitutional claims in state court.

Ms. Dailey proceeded in the Court of Common Pleas after we abstained pending its interpretation of Section 22-1302(1)(a)(.4) and (.5) of the Retirement Code. Once in the Court of Common Pleas, Ms. Dailey made an *England*[39] reservation asserting her right to return here to prosecute her federal constitutional claims. Under *England*, a litigant in state court may reserve

6

her federal claims for decision by the federal court, and avoid the preclusive effect of the state court decision, when a federal court abstains under *Pullman*. We are guided by the Supreme Court's explanation of an *England* reservation: "when a federal court abstains from deciding a federal constitutional issue to enable the state courts to address an antecedent state-law issue, the plaintiff may reserve [her] right to return to federal court for the disposition of [her] federal claims."[40]

On December 20, 2016, after oral argument, the Honorable Abbe F. Fletman of the Philadelphia County Court of Common Pleas affirmed the Pension Board's February 25, 2016 final decision.[41] Ms. Dailey appealed to the Pennsylvania Commonwealth Court.[42]

On August 18, 2017, Judge Fletman issued her opinion in support of her order affirming the Pension Board.[43] Judge Fletman applied the standard of review from an agency's decision requiring her to affirm the Pension Board's decision unless it violated Ms. Dailey's constitutional rights, committed an error of law, or made necessary findings of fact unsupported by substantial evidence.[44]  Judge Fletman concluded the Pension Board did not violate Ms. Dailey's constitutional rights because it acted under a mandatory provision of the Retirement Code; did not commit an error of law in finding Ms. Dailey ineligible to receive pension benefits for failing to meet the conditions precedent for pension eligibility; and the Board's decision is based on substantial evidence.[45]  Judge Fletman did not interpret subsection (.4) or (.5).

Ms. Dailey then asked us to remove the case from our suspense docket arguing the reason for *Pullman* abstention is no longer applicable in the wake of Judge Fletman's opinion which concededly did not interpret the subsections of the Retirement Code at issue.[46] Ms. Dailey argued her *England* reservation allowed her to return to prosecute her federal constitutional claims regardless of her appeal to the Commonwealth Court. The City countered we must continue to

7

abstain under *Pullman* until the Pennsylvania appellate courts weigh in on the meaning and application of Section 22-1302(1)(a)(.4) and (.5).[47]The City also argued we should continue to abstain under *Pullman* because, if unsuccessful in the state courts, Ms. Dailey's *England* reservation allows her to "petition this Court to argue that the federal claims she preserved mandate relief."[48]

We continued to abstain, deferring to the Commonwealth Court to interpret the challenged sections of the Retirement Code.[49] We recognized "[t]here is no question Ms. Dailey may return to this Court for adjudication of her federal claims" after "determination from Pennsylvania's appellate courts whether the Retirement Code applies to Ms. Dailey as an employee of the First Judicial District."[50] We continued to abstain under *Pullman* "in the hope the Pennsylvania courts will address the ambiguity in the application of the Retirement Code to Ms. Dailey."[51]

### E. The Commonwealth Court interprets the Retirement Code and the Pennsylvania Supreme Court denies Ms. Dailey's petition for allowance of appeal.

Ms. Dailey pressed on in the Commonwealth Court arguing:

- by its language subsection (.4) does not apply to her because she pleaded guilty to theft from the First Judicial District which is not "the City, … any official agency of the City, or agency, engaged in performing any governmental function for the City or the Commonwealth" and subsection (.4) fails to give notice and guidance to Retirement System members of a disqualifying event making its application unconstitutional under the Pennsylvania Constitution;

- by its language, subsection (.5) does not apply to her because she did not plead guilty to "malfeasance in office or employment" subsection (.5) fails to give notice and guidance to Retirement System members of a disqualifying event making its application unconstitutional under the Pennsylvania Constitution;

- the decision of the Court of Common Pleas is contrary to the Pennsylvania Public Employee Pension Forfeiture Act, 43 P.S. § 1311 *et seq.*;

- application of subsections (.4) and (.5) to suspend and revoke her pension benefits violated the Pennsylvania Constitution because she had no notice of grounds for disqualification and both subsections as applied to her are void for vagueness; revocation of her pension is

8

so excessive as to amount to the deprivation of property without due process of law; revocation of her pension is unreasonable and an unduly oppressive deprivation of important rights without due process of law; and revocation of her pension constitutes a forfeiture punitive in nature in violation of the excessive fines clause of the Pennsylvania Constitution.[52]

After oral argument, the Commonwealth Court affirmed Judge Fletman and more specifically on point, the Pension Board.[53] It rejected Ms. Dailey's argument subsection (.5) does not apply to her because she did not plead guilty to "malfeasance in office or employment."[54] The Commonwealth Court affirmed the Pension Board's reasoning Ms. Dailey's theft from the First Judicial District is the "commission of a wrongful and unlawful act by a public official, constituting malfeasance in office and employment in violation of Section 22-1302 of the Retirement Code."[55]

In reaching its decision, the Commonwealth Court relied on its reasoning in *Tepper v. City of Philadelphia Board of Pensions and Retirement*[56] decided in 2017 during our *Pullman* abstention. In *Tepper*, the Commonwealth Court defined the meaning of subsection (.5) and concluded "malfeasance" occurs "when there is 'either the breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive.' … The focus is on 'the underlying illegal act, as opposed to the particular crime, [that] form[s] the basis for a forfeiture ….'"[57] The Commonwealth Court explained it construes the undefined term "malfeasance" according to is "common and approved usage" meaning a wrongful or unlawful act, especially wrongdoing or misconduct by a public official, citing Black's Law Dictionary.[58]

For the same reasons, the Commonwealth Court rejected Ms. Dailey's argument subsection (.5) is unconstitutionally vague and its application violates her right to due process and held the Pension Board properly relied on subsection (.5) of the Retirement Code to disqualify Ms. Dailey from eligibility for her pension.[59] Because it concluded subsection (.5) "provides adequate grounds for disqualification in this instance" the Commonwealth Court found it "need not

9

determine whether the [First Judicial District] is an 'agency' for purposes of [subsection (.4)] of the Retirement Code."[60]

The Commonwealth Court additionally rejected Ms. Dailey's argument the forfeiture of her pension is unconstitutional as an excessive fine under the United States and Pennsylvania Constitution based on its earlier decision, *Scarantino v. Public School Employees' Retirement Board*.[61] In *Scarantino*, a former public school superintendent challenged the forfeiture of his retirement benefits under Pennsylvania's Public School Employees' Retirement System after he plead guilty to a federal criminal offense. The employee challenged the forfeiture of $1.5 million in pension benefits violates the Pennsylvania Constitution and the Excessive Fines Clause of the United States Constitution. The Commonwealth Court rejected the argument. The Commonwealth Court explained the "Excessive Fines Clause of the Eighth Amendment is only implicated if the fine is a punishment" and "[f]orfeitures are 'fines' if they constitute punishment for an offense."[62] The Commonwealth Court found "the relationship between a public school employee and the [Retirement System] is contractual in nature" and eligibility to receive retirement benefits includes satisfaction of all conditions precedent including "that an employee cannot have been convicted of one of the enumerated crimes or a substantially the same [sic] federal crime."[63]

The Commonwealth Court concluded Ms. Dailey's eligibility for pension benefits, like the plaintiff in *Scarantino*, is based on contract and does not result in an unconstitutional forfeiture where she did not meet the conditions precedent.[64] The Commonwealth Court rejected Ms. Dailey's remaining due process arguments subsections (.4) and (.5) are unconstitutionally vague and constitute a grossly excessive deprivation of property, explaining the case authority she relied on "rest[s] on her incorrect assertions that pension disqualification is a fine or punishment."[65]

Unsuccessful in the Commonwealth Court, Ms. Dailey petitioned for allowance of appeal to the Pennsylvania Supreme Court. On May 22, 2019, the Pennsylvania Supreme Court denied Ms. Dailey's Petition for Allowance of Appeal.[66]

### F. Removal of the case from our suspense docket.

As Ms. Dailey exhausted her arguments at the highest Pennsylvania appellate courts, we removed this case from our suspense docket.[67] The City renewed its Motion to dismiss and Ms. Dailey renewed her Motion for partial summary judgment seeking judgment on her Excessive Fines Clause and Due Process Clause claims.

We notified the parties we may consider the entry of summary judgment in favor of the City and, under Federal Rule of Civil Procedure 56(f), granted the parties leave to file supplemental memoranda.[68] The City supplemented its arguments asking we deny Ms. Dailey's partial Motion for summary judgment and enter judgment in its favor on all her claims, including the Fifth Amendment Takings Clause claim.[69] Ms. Dailey responded summary judgment should be entered in her favor on her Excessive Fines Clause and Due Process Clause claims and deny the City's Motion for summary judgment.[70] We held oral argument on the pending motions.

### II. Analysis[71]

The threshold issue is the effect of the Commonwealth Court's November 9, 2018 decision. The City argues we must give it preclusive effect and dismiss Ms. Dailey's amended complaint in its entirety (with the exception of her Takings Clause claim). It argues under issue preclusion, or collateral estoppel, the Commonwealth Court's decision precludes Ms. Dailey's federal constitutional claims here. Ms. Dailey responds she made an effective *England* reservation and the Commonwealth Court's decision has no effect whatsoever on her claims here.

We must review Ms. Dailey's federal constitutional claims. But we do so by applying the construction given the Retirement Code Section 22-1302 by the Commonwealth Court. We are bound by the Commonwealth Court's construction of the Retirement Code. Applying the Commonwealth Court's interpretation of the Retirement Code, it is not unconstitutionally vague.

Turning to the remainder of Ms. Dailey's claims, the Retirement Code is not an excessive fine, does not violate substantive due process, and is not property for the purposes of her Takings Clause claim. We enter judgment in favor of the City dismissing all of Ms. Dailey's claims in the accompanying Order.

### A. Following our *Pullman* abstention and Ms. Dailey's *England* reservation, we follow the Commonwealth Court's November 9, 2018 interpretation of the Retirement Code.

Ms. Dailey's threshold argument both here and in her state court action is Retirement Code Section 22-1302(1)(a) subsection (.4) as applied to her and subsection (.5) on its face and as applied to her are void for vagueness. Faced with an uncertain question of Pennsylvania's interpretation of subsections (.4) and (.5) at the time Ms. Dailey filed her complaint in 2016, we abstained under *Pullman*.[72]

Absent clarification by Pennsylvania's state courts, we could not then determine whether subsection (.4)'s prohibition on theft from "the City, or those of any official agency of the City, or agency, engaged in performing any governmental function for the City or Commonwealth" applied to Ms. Dailey as an employee of the First Judicial District. Similarly, we could not then determine the definition of "malfeasance in officer or employment" in subsection (.5). Applying the test for *Pullman* abstention in this circuit, we recognized at least one Pennsylvania Commonwealth Court decision defined the meaning of "malfeasance" in Retirement Code Section 22-1302 but in another later decision the Commonwealth Court declined to address whether subsection (.5) is vague,

12

creating uncertain issues of state law underlying the federal constitutional claims here;[73] we found the state court's resolution of the meaning of the Retirement Code may obviate the need for our adjudication of Ms. Dailey's constitutional claims; and, any erroneous construction of the Retirement Court by us would disrupt important state policies. [74]

Abstention under *Pullman* postpones decisions on constitutional questions because "when the outcome of a constitutional challenge turns on the proper interpretation of state law, a federal court's resolution of the constitutional question may turn out to be unnecessary. The state courts could later interpret the state statute differently. And the state court's different interpretation might result in a statute that implicates no constitutional question, or that renders the federal court's constitutional analysis irrelevant. ... Abstention ... avoid[s] this risk by deferring a federal court's decision on the constitutionality of the state statute until a state court has authoritatively resolved the antecedent state-law question."[75] When we abstain under *Pullman*, our "decision sends the plaintiff to state court. Once the plaintiff obtains the state courts' views on the statute, [she] may return to federal court, state-court decision in hand, for resolution of the constitutional question."[76]

And this is exactly the situation now. We have in hand the Pennsylvania Commonwealth Court's November 9, 2018 decision interpreting "malfeasance" in subsection (.5). As analyzed below, we apply its interpretation to Ms. Dailey's void for vagueness argument.

Perhaps conflating the issues, the City argues we must dismiss Ms. Dailey's claims (except for her Takings Clause claim) because the Commonwealth Court's decision is preclusive. The City argues issue preclusion requiring (1) "the party against whom preclusion is asserted is the same, [and] the issue is identical;" (2) "the previous judgment was final and on the merits;" and (3) "the parties had a full and fair opportunity to litigate."[77] The City argues the issues are identical here because Ms. Dailey's *England* reservation failed. The City contends she voluntarily presented

13

both her state *and* federal constitutional claims to the state courts, the Commonwealth Court decided her federal constitutional claims, and Ms. Dailey is attempting to "take a second bite at the apple." This argument hinges on the City's assertion Ms. Dailey *chose* to advance her federal constitutional claims in her state court action, relying heavily on *San Remo Hotel, L.P. v City and County of San Francisco*.[78]

In *San Remo*, California hotel owners challenged under the Fifth Amendment Takings Clause a city ordinance requiring payment of a fee before approval of a permit to convert residential units to tourist units. After originally filing a complaint in state court, the hotel owners filed an action in federal court against the City and County of San Francisco alleging both state and federal constitutional claims.[79] The district court granted summary judgment in favor of the City and County.[80] On appeal to the Court of Appeals for the Ninth Circuit, the hotel owners asked the court to abstain under *Pullman* "because a return to state court could conceivably moot the remaining federal questions."[81] The Court of Appeals granted the hotel owners' request for *Pullman* abstention on the facial challenge to the City ordinance, appending in a footnote the hotel owners "would be free to raise their federal takings claim in the California Courts" but if the hotel owners "wanted to retain [their] right to return to federal court for adjudication of [their] federal claim, [they] must make an appropriate reservation in state court."[82]

The hotel owners returned to state court where they made an *England* reservation.[83] The state trial court dismissed the complaint, the intermediate appellate court reversed, and the California Supreme Court reversed the appellate court, reinstating the trial court's order dismissing the complaint.[84] The hotel owners did not seek a writ of *certiorari* from the California Supreme Court's decision to the United States Supreme Court and instead returned to federal district court.[85]

14

The district court found the hotel owners' facial attack on the City ordinance barred by issue preclusion, a decision affirmed by the Court of Appeals for the Ninth Circuit.[86] The Supreme Court affirmed, finding the hotel owners' *England* reservation did not negate the preclusive effect of the state-court judgment.[87] The Court recognized the hotel owners "were entitled to insulate from preclusive effect one federal issue—their facial constitutional challenge to [the City ordinance]—while they returned to state court to resolve their petition for writ of mandate."[88] But the hotel owners "chose to advance broader issues than the limited issues contained within their state petition ... on which the Ninth Circuit relied when it invoked *Pullman* abstention" and "effectively asked the state court to resolve the same federal issues they asked it to reserve. *England* does not support the exercise of any such right."[89]

In response to the City's issue preclusion argument, Ms. Dailey responds she made an effective *England* reservation and, after our abstention under *Pullman*, litigated only her state constitutional claims in the state courts. She argues the Pennsylvania and United States Constitutions are not identical, she only referred to federal constitutional law as interpretive guidance for her Pennsylvania constitutional claims, and when the City opposed removal of this action from the suspense docket after Judge Fletman's decision, it argued Ms. Dailey's *England* reservation is one of the reasons why we should continue abstention under *Pullman*.

The preclusive effect of the Commonwealth Court's decision is a close call. We are guided by Supreme Court's teaching in *San Remo* an *England* reservation does not "fully negate the preclusive effect of the state-court judgment with respect to any and all federal issues that might arise in the future federal litigation" and district courts are "not free to disregard 28 U.S.C. § 1738 [full faith and credit statute] simply to guarantee that all takings plaintiffs can have their day in federal court."[90] It is difficult to separate the constitutional claims under the Pennsylvania and

15

United States Constitutions making this unlike a typical *England* reservation. They appear to be the same legal issue. If so, we could readily conclude Ms. Dailey waived her *England* reservation and the Commonwealth Court's final decision should be afforded preclusive effect.

Although we could potentially find a waiver of the *England* reservation, on balance, it is prudent to consider the issues on their merits. Based on a review of Ms. Dailey's Commonwealth Court briefing, she did not "choose to advance broader issues" and voluntarily litigate her federal constitutional claims in the state court action, making her different than the petitioners in *San Remo*. A review of the Commonwealth Court's opinion reveals it did not address the federal constitutional claims the Retirement Code is void for vagueness in violation of due process. While the Commonwealth Court characterized Ms. Dailey's argument "forfeiture of her pension is unconstitutional as an excessive fine under the United States and Pennsylvania Constitutions" and ultimately rejected her argument, Ms. Dailey did not advance arguments under the federal constitution there.

The Commonwealth Court's decision is not preclusive on the issue before us.

## B. We reject Ms. Dailey's argument *Giaccio* allows us to ignore the Commonwealth Court's interpretation of "malfeasance."

The Pennsylvania Commonwealth Court, both in its *Dailey* opinion and in *Tepper*, construes the term "malfeasance" in subsection (.5) "'according to its common and approved usage,' that is as a wrongful or unlawful act, especially wrongdoing or misconduct by a public official." Ms. Dailey argues we must reject the Commonwealth Court's interpretation of the term "malfeasance" as used in subsection (.5) of the Retirement Code.

At oral argument, Ms. Dailey argued our analysis must be under the "federal constitutional provision," and the Commonwealth Court did not decide "whether or not the provision [subsection (.5)] actually set standards or even if it applied to Ms. Dailey in particular."[91] Ms. Dailey argues

the Commonwealth Court's interpretation of the Retirement Code is defective because it did not "address[] the federal constitutional analysis" and its interpretation of the term "malfeasance" as "the commission of a wrongful and unlawful act by a public official" does not give "the kind of guidance, the notice that's constitutionally required."[92] She argues the Commonwealth Court "gave a reading of (.5) that was still constitutionally suspect" and, when asked at oral argument how we can invalidate the Commonwealth Court's interpretation of "malfeasance," Ms. Dailey responded we may "second guess the Commonwealth Court" and we are not bound by its decision.[93] To support this argument, she relies solely on a 1966 Supreme Court decision, *Giaccio v. State of Pennsylvania*.[94]

We reject Ms. Dailey's argument in its entirety. We cannot simply disregard the Commonwealth Court's interpretation of the term "malfeasance." To the contrary, on a facial challenge to a state statute to determine "whether a state statute is too vague and indefinite to constitute valid legislation, we must take the statute as though it read precisely as the highest court of the State has interpreted it."[95] "If there is no authoritative precedent from the state supreme court, this court may look to an intermediate appellate court's construction of the statute."[96] We must also "consider any limiting construction that a state court or enforcement agency has proffered."[97]

Ms. Dailey's reliance on *Giaccio* is misplaced because it arises in an entirely different procedural context. In *Giaccio*, the plaintiff challenged as vague a Pennsylvania statute authorizing juries to assess costs against acquitted defendants, with threat of imprisonment until paid, without prescribing definite standards to govern the jury's determination.[98] The plaintiff challenged the statute *in the state trial court* which held the state statute void for vagueness in

17

violation of due process.[99] The Pennsylvania Superior Court reversed the trial court[100] and the Pennsylvania Supreme Court affirmed the Superior Court.[101]

Mr. Giaccio appealed from the Pennsylvania Supreme Court to the United States Supreme Court.[102] There, the Commonwealth argued even if the challenged statute is void for vagueness as originally written, subsequent state court interpretations provided "standards and guides that cure the former constitutional deficiencies."[103] The United States Supreme Court disagreed, finding the "court-created conditions and standards still leave to the jury such broad and unlimited power in imposing costs on acquitted defendants that the jurors must make determinations of the crucial issue upon their own notions of what the law should be instead of what it is."[104]

Ms. Dailey argues *Giaccio* provides authority for us to invalidate the Commonwealth Court's interpretation of "malfeasance" in subsection (.5). But Ms. Dailey's case is procedurally different. In *Giaccio*, the United States Supreme Court reviewed a direct appeal from a state court judgment by writ of *certiorari*. This is not the context here. Ms. Dailey could have, but chose not to, file a petition for writ of *certiorari* from the Pennsylvania Supreme Court's denial of her petition for allowance of appeal to the United States Supreme Court. Instead, Ms. Dailey returned to us seeking summary judgment on, *inter alia*, her federal due process void for vagueness claim arguing *Giaccio* allows us, and in fact requires us, to invalidate the Commonwealth Court's two recent interpretations of the term "malfeasance" in subsection (.5).

We abstained under *Pullman* to allow the Pennsylvania courts to interpret Retirement Code Section 22-1302(1)(a)(.4) and (.5). During our abstention, the Commonwealth Court twice interpreted the term "malfeasance" in subsection (.5). We apply its interpretation of this term to Ms. Dailey's void for vagueness claims.

18

### C. Section 22-1302(1)(a)(.5) is not unconstitutionally vague on its face or as applied to Ms. Dailey.

Ms. Dailey seeks summary judgment on her void for vagueness claim because the term "malfeasance" in subsection (.5) is unconstitutionally vague. In her amended complaint, Ms. Dailey claims Section 22-1302(1)(a)(.5)—"malfeasance in office or employment"—violates the Due Process Clause, both on its face and as-applied to her.[105] She argues subsection (.5) only permits disqualification from the City's Retirement System where an employee "pleads or is finally found guilty, or pleads no defense, in any court, to …[m]alfeasance in office or employment." Ms. Dailey argues she pleaded guilty to theft of movable property by unlawful taking and *not* "malfeasance in office or employment." She argues to the extent subsection (.5) allowed the City to disqualify her from pension benefits based on her guilty plea to theft, the term "malfeasance" is unconstitutionally vague.

The Due Process Clause of the Fourteenth Amendment provides no state "shall … deprive any person of life, liberty, or property, without due process of law; …."[106] Under federal constitutional law, "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."[107] The "void for vagueness" doctrine addresses two due process concerns: "first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way."[108] Although rooted in the context of criminal statutes, the void for vagueness doctrine now extends to the civil context.[109]

The measure of "vagueness" is based on the understanding of people of "common intelligence." "It is well-settled in American jurisprudence, a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as its meaning and differ as to its application, violates the first essential of due process of

law."[110] The void for vagueness doctrine is "based on the idea of fairness. Its purpose is only to give 'fair warning' of prohibited conduct."[111] "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand."[112]

There are two different void for vagueness challenges: facial or as-applied. "The difference between the two is significant."[113] A party asserting a facial challenge to a statute "must establish that no set of circumstances exists under which the Act would be valid."[114] "This is a particularly demanding standard and is the 'most difficult challenge to mount successfully.'"[115] The Supreme Court "disfavors" facial challenges because such claims "often rest on speculation"; "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied"; and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution."[116]

By contrast, an as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right."[117] Ms. Dailey's briefing does not distinguish between her facial and as-applied attack on subsection (.5).

Through Retirement Code Section 22-1302(1)(a), the City disqualifies an employee from retirement benefits if she "pleads or is finally found guilty ... to ... [m]alfeasance in office or employment." We have the Commonwealth Court's interpretation of the term "malfeasance." Since our abstention Order, the Commonwealth Court decided *Tepper* and its opinion in Ms. Dailey's state court action, reaffirming *Tepper*'s construction of "malfeasance."

20

In *Tepper*, the Commonwealth Court recognized while the term "malfeasance" is not defined in the Retirement Code, the term is defined by the Commonwealth Court's earlier case law. In those cases, the term "malfeasance" is defined as "not merely error in judgment or departure from sound discretion, but the act, omission or neglect must be willful, corrupt and amount to a breach of duty legally required by one who has accepted public office"[118] and "where there is 'either the breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive.'"[119] The Commonwealth Court explained "[t]he focus is on the 'underlying illegal act, as opposed to the particular crime, [that] form[s] the basis for the forfeiture.'"[120] The Commonwealth Court explained it construes "malfeasance" "'according to its common and approved usage,' that is as a wrongful or unlawful act, especially wrongdoing or misconduct by a public official."[121]

Ms. Dailey objects to the Commonwealth Court's definition of "malfeasance." She argues the term "malfeasance" is vague and provides "insufficient guidance as to what conduct is permitted and what conduct is prohibited" under subsection (.5) like the constitutionally defective statute in *Giaccio*. She contends the Commonwealth Court's definition violates federal constitutional law under *Giaccio*.

The statute in *Giaccio*, and the constructions applied by the state courts, are far different than the definition of "malfeasance" provided by the Commonwealth Court. The Supreme Court in *Giaccio* found the challenged statute constitutionally infirm because it contained no standards at all and did not provide conditions on the jury's power to impose costs upon an acquitted defendant.[122] The Supreme Court rejected the meaning given by the trial court in its jury charge explaining costs could be imposed if it found "some misconduct less than that charged against [the

acquitted defendant]."[123] The Supreme Court found "some misconduct," though "nearer to giving a guide to the jury," still "falls short of the kind of legal standard due process requires."[124]

This is far from the term "malfeasance" defined by the Commonwealth Court according to its common usage as a wrongful or unlawful act, especially wrongdoing or misconduct by a public official as well as its earlier decisions similarly defining malfeasance.

The void for vagueness standard is based on an understanding of people of "common intelligence." Subsection (.5) is not unconstitutionally vague measured against this standard. Ms. Dailey bears the burden of proving vagueness "not in the sense that it requires a person to conform [her] conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all."[125] She does not meet her burden subsection (.5) is so vague people of "common intelligence must necessarily guess as its meaning and differ as to its application." It is undisputed Ms. Dailey plead guilty to theft from the First Judicial District by using its credit cards for her own personal use without authorization. She does not dispute the Pension Board's characterization, at the time of her offense, she occupied the position of "a high-ranking [First Judicial District] officer" who, as a public employee, committed an "in-office offense."[126] We cannot conceive a person of common intelligence "must necessarily guess" the theft of over $73,000 from her public employer constitutes "malfeasance in office or employment" disqualifying her from the City's Retirement System.

We similarly dispose of Ms. Dailey's additional arguments challenging subsection (.5). Ms. Dailey challenges the facts underlying the decision by arguing the Commonwealth Court "did not address whether [she], as an employee of the [First Judicial District], was a 'public official' within the meaning of the Retirement Code's disqualifying provision or whether the underlying 'wrongful and unlawful act' of [a] [First Judicial District] employee was 'in office and

employment' within the meaning of the City's Retirement Code."[127] But Ms. Dailey does not dispute at the time of her termination she occupied the position of Chief Deputy Prothonotary and Clerk of Courts or the Board's finding theft from the First Judicial District, her employer, "directly related to her position in the [First Judicial District], which gave her access to the credit card."[128] We cannot locate in the record, and Ms. Dailey does not direct us to it, where Ms. Dailey challenged the Pension Board's conclusion finding her a "public official" who committed an "in-office offense."

Ms. Dailey additionally argues vagueness based on Pennsylvania's abolition of all common law crimes including "malfeasance in office." She argues because subsection (.5) only applies to "malfeasance in office or employment" and Pennsylvania abolished the common law crime of "malfeasance in office," it is unreasonable to interpret "malfeasance in office in a manner that would expand the substantive scope of the 'malfeasance in office or employment' provision" in subsection (.5).[129] A broad interpretation of subsection (.5) is unreasonable, she argues, because it would render other crimes "specifically enumerated" in Section 22-1302(1)(a) "superfluous."[130] Ms. Dailey contends it is reasonable for a member to interpret subsection (.5) only by a guilty plea to the crime of "malfeasance in office."

Under Pennsylvania's rules of statutory construction, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition."[131] We are also instructed by Pennsylvania's rules of statutory construction "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly" and "[e]very statute shall be construed, if possible, to give effect to all

23

of its provisions."[132] We presume the General Assembly "does not intend a result that is absurd, impossible of execution or unreasonable"; "intends the entire statute to be effective and certain"; "does not intend to violate the Constitution of the United States or of this Commonwealth"; "when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be place upon such language"; and "intends to favor the public interest as against any private interest."[133]

Ms. Dailey's construction—essentially, employees would only reasonably understand "malfeasance in office or employment" to mean the now abolished common law crime of "malfeasance in office"—runs counter to Pennsylvania's rules of statutory construction. We are directed to give the word "malfeasance" its common and approved usage and presume the Code's drafters do not intend an absurd result or to violate the Constitution. It would be absurd to include "malfeasance in office or employment" as a disqualifying event but have it without effect because the common law crime of "malfeasance in office" is abolished. If we accepted Ms. Dailey's argument, subsection (.3) of Section 22-1302 would also be void for vagueness because "graft" is not a statutorily defined offense under Pennsylvania's criminal code.

We reject Ms. Dailey's suggestion our Order abstaining under *Pullman* supports her vagueness argument. In our Order, we explained "uncertain issues of state law underlying the federal constitutional claim brought in federal court"—the first *Pullman* factor—weighed in favor of abstention. We explained "we cannot determine, in the first instance, whether §§ (.4), (.5)" of the Retirement Code applies, finding "at a minimum, ... uncertain issues of state law as to whether [Ms. Dailey's] guilty plea to theft could also constitute 'malfeasance' under Pennsylvania law, as addressed by at least one Pennsylvania appellate court."[134] We now have the Commonwealth Court's decisions in *Tepper* and *Dailey* defining malfeasance.

24

Retirement Code Section 22-1302(a)(1)(.5) is not void for vagueness either on its face or as applied to her. We enter judgment in favor of the City on Ms. Dailey's void for vagueness Due Process Clause claims. Having determined subsection (.5) does not violate due process, we need not reach subsection (.4)'s application to Ms. Dailey. She is disqualified under subsection (.5)

### D. The Pension Board's disqualification does not violate the Excessive Fines Clause of the Eighth Amendment.

Ms. Dailey next argues even if Retirement Code is not void for vagueness, the City's disqualification of her under the Retirement Code deprived her of her rights under the Excessive Fines Clause of the Eighth Amendment. The Eighth Amendment proscribes "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[135] The clause "nor excessive fines imposed" "limits the government's power to extract payments, whether in case or in kind, 'as punishment for some offense.'"[136] The Eighth Amendment's Excessive Fines Clause is violated where the "fine" is a punishment for an offense and is "excessive."[137]

Ms. Dailey argues forfeiture under the Section 22-1302(1)(a) of the Retirement Code is both punitive and excessive. As to the punitive prong, Ms. Dailey argues it is undisputed the forfeiture of her vested retirement benefit is punitive under the Supreme Court's standard in *Austin v. United States*.[138] In *Austin*, the Supreme Court considered whether the United States' *in rem* action seeking forfeiture of a criminal defendant's mobile home and business under federal statute is a punishment. The Court concluded "forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment."[139] With reference to the specific forfeiture statute challenged, the Court examined the legislative history of the statute finding Congress chose to "tie forfeiture directly to the commission of drug offenses" and "understood [the statute] as serving to deter and to punish" and concluded the statute is punitive,

25

and subject to the Excessive Fines Clause.[140] The Court declined to establish a test for determining whether a forfeiture is constitutionally excessive.[141]

Five years after *Austin*, the Supreme Court set the standard for "excessive" in *United States v. Bajakajian.*[142] Under *Bajakajian*'s test, "punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."[143] In applying this standard, we "compare the amount of the forfeiture to the gravity of the defendant's offense" and, "[i]f the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional."[144] Applying *Bajakajian*, Ms. Dailey argues forfeiture of over $2.2 million in estimated lifetime vested retirement benefits is unconstitutionally excessive because it is grossly disproportional to the gravity of her offense.

The City responds *Austin* does not apply because Ms. Dailey's pension is not property used in relation to her criminal offense. Instead, the City argues, Ms. Dailey did not meet eligibility and is not entitled to her pension because of her guilty plea to theft from the First Judicial District. Under the Retirement Code, her in-office criminal conduct is a failure to satisfy the conditions precedent to qualify for retirement benefits.[145]

The City relies on an earlier Commonwealth Court decision, *Scarantino v. Public School Employees' Retirement Board*[146] on which the Commonwealth Court relied in its November 9, 2018 decision. In *Scarantino*, a former public-school superintendent challenged an order of the Public School Employees' Retirement Board determining he forfeited his retirement benefits under Pennsylvania's Public Employee Pension Forfeiture Act[147] as a result of his guilty plea to a federal crime. Among his challenges to the Board's decision, the superintendent argued forfeiture of $1.5 million in pension benefits violates the excessive fines clause of both the Pennsylvania and United States Constitution.

26

The Commonwealth Court in *Scarantino* found the relationship between a public school employee and the retirement system contractual in nature.[148] The court cited Section 1313(a)'s "mandatory disqualification and forfeiture of benefits upon 'conviction[] or plea[] of guilty or no defense to any crime related to public office or public employment."[149] Section 1313(b) deems "[s]uch conviction or plea ... a breach of a public officer's or public employee's contract with his employer."[150] The Commonwealth Court in *Scarantino* concluded to receive retirement benefits and employee must satisfy all conditions precedent, like age and years of service, and must also satisfy an additional condition precedent for eligibility "that an employee cannot have been convicted of one or the enumerated crimes or a substantially the same federal crime."[151]

In affirming the Court of Common Pleas in Ms. Dailey's state action, the Commonwealth Court relied on *Scarantino*. It held Ms. Dailey, as a public employee, did not meet the conditions precedent of pension eligibility, rejecting her excessive fines argument. Ms. Dailey takes issue with the Commonwealth Court's reliance on *Scarantino*.[152]

We see no reason to depart from the Commonwealth Court's decision in *Scarantino* and disagree with Ms. Dailey's argument the forfeiture of her pension benefits is a punishment. In reaching its conclusion in *Scarantino*, the Commonwealth Court relied on the Pennsylvania Supreme Court's decision in *Commonwealth v. Abraham*.[153] In *Abraham*, the Pennsylvania Supreme Court examined Pennsylvania's Forfeiture Act in the context of a former teacher's challenge to his guilty plea to indecent assault of a minor. After his guilty plea, the teacher filed a petition under the Post Conviction Relief Act, arguing in effectiveness of his plea counsel for failing to inform him he would forfeit his pension upon pleading guilty.[154] The Supreme Court addressed whether the "forfeiture of a pension that stems from a public school teachers' negotiated

27

plea to crimes committed in the scope of his employment is a collateral consequence of a criminal conviction which relieves counsel from any affirmative duty to investigate and advise?"[155]

The Pennsylvania Supreme Court determined forfeiture of the pension is non-punitive.[156] It reasoned the goal of Pennsylvania's Forfeiture Act is triggered by "a specific class of crimes which are particularly abhorrent when committed by those serving the public; that a plea to such crimes is deemed a breach of the employment contract suggests strongly that the statute is designed to ensure employees maintain their integrity while in public employment" and the Act's goal is "to restrict future benefits for employees who commit certain crimes, a deterrent."[157] The Supreme Court held the Forfeiture Act "is to ensure accountability and address corruption; it is triggered by an employee's breach of the public employment contract by commission of a very specific class of crimes" and "[a]n employee who breaches his contract forfeits his right to deferred compensation for services rendered in the past. Entitlement to the compensation that is deferred, however, is not without conditions, the relevant one being that the employee not commit any of the enumerated crimes."[158]

We are not persuaded by Ms. Dailey's argument *Scarantino* is distinguishable. Under Pennsylvania law, the forfeiture of a public employee's pension is triggered by the employee's breach of the public employment contract. We see no reason to distinguish *Scarantino* and *Abraham* from Ms. Dailey's case based on her membership in the City's Retirement System versus the State's Retirement System. Ms. Dailey concedes Mr. Scarantino's employment relationship with the State Employee Retirement System is contractual in nature but argues it is only because Pennsylvania's Public Employee Pension Forfeiture Act ("Forfeiture Act") contains specific language making a public official's or public employee's contract with her employer based in contract.[159] She argues Section 1331(b) of Forfeiture Act specifically states "conviction or plea

shall be deemed to be a breach of a public officer's or public employee's contract with his employer" and there is no equivalent provision in the City's Retirement Code.[160]

The Forfeiture Act provides "[n]otwithstanding any other provision of law, no public official or public employee nor any beneficiary designated by such public official or public employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest, if such public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment."[161] The Forfeiture Act also provides "[t]he benefits shall be forfeited upon entry of a plea of guilty or no defense or upon initial conviction and no payment or partial payment shall be made during the pendency of an appeal. If a verdict of not guilty is rendered or the indictment or criminal information finally dismissed, then the public official or public employee shall be reinstated as a member of the pension fund or system and shall be entitled to all benefits including those accruing during the period of forfeiture if any. *Such conviction or plea shall be deemed to be a breach of a public officer's or public employee's contract with his employer*."[162]

Philadelphia's Retirement Code Section 22-1302 similarly provides "[n]otwithstanding any other provision in this Title, no employee nor any beneficiary designated by or for any employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of contribution made into the Retirement System, without interest, if such employee: (a) pleads or is finally found guilty, or pleads no defense, in any court, to any of the following: .... (.5) [m]alfeasance in office or employment."[163] It does not contain language similar to the Forfeiture Act deeming any conviction a breach of the employee's contract. The Pension Board considers Section 1313 of the Forfeiture Act the "state counterpart" of Section 22-1302.[164]

29

The Pennsylvania Supreme Court in *Abraham* recognized the legislative history of the Forfeiture Act demonstrating "its aim of preventing those who violate the public's trust from receiving the benefit of a taxpayer-funded pension." The Pennsylvania Supreme Court cited floor debate on the Forfeiture Act: "This bill now not only applies to state employees but to all public employees. I think that is what the taxpayers of Pennsylvania want. They do not want a bill to be limited to just state employees. They want it to apply also to those people who are covered by the State Teacher Employment Fund *and the municipal retirement funds*."[165]

There is no dispute the City pays into the Retirement System[166] and Ms. Dailey, as an "employee," is paid from the City Treasury.[167] Ms. Dailey does not dispute the benefits the City's portion of the retirement benefits she seeks under the Retirement System is taxpayer-funded.

If we were to accept Ms. Dailey's argument, the nature of the employment relationship of all public employees and officials of the City is exempt from the Commonwealth's interest in "preventing those who violate the public's trust" by pleading guilty to certain offenses, including malfeasance in office or employment, "from receiving the benefit of a taxpayer-funded pension." In Ms. Dailey's view, this subjects the forfeiture of any City employee's pension to *Austin*'s Eighth Amendment Excessive Fines Clause analysis while every other public employee in Pennsylvania could not, as a matter of law, claim pension forfeiture is an excessive fine under *Austin*. We decline Ms. Dailey's invitation to reach this conclusion yielding an absurd result.

Ms. Dailey additionally argues even if the nature of her public employment is contractual in nature, it is not dispositive of whether forfeiture of her pension is subject to Eighth Amendment protection.[168] She identifies the key issue as whether the forfeiture of the benefit is punitive and the "key inquiry" is whether forfeiture is "intended in any respect to serve retributive or deterrent purposes," citing *Austin*. But this ignores *Scarantino's* holding the relationship between a public

30

employee and a state retirement system is contractual in nature.[169] Since *Scarantino*, the Commonwealth Court held forfeiture of a magisterial district judge's pension under the State Employees Retirement System as a result of pleading guilty to federal mail fraud is not a forfeiture under the Eighth and Fourteenth Amendments of the United States Constitution or Article 1, Section 13 of the Pennsylvania Constitution.[170]

We enter summary judgment in favor of the City on Ms. Dailey's Excessive Fines Clause claim.

### E. The City did not arbitrarily deprive Ms. Dailey of property or impose an unconstitutionally excessive punitive sanction in violation of the Due Process Clause.

The City seeks summary judgment on Ms. Dailey's claim alleging an arbitrary deprivation of property and excessive punitive sanction under the Fourteenth Amendment's Due Process Clause. Ms. Dailey alleges Section 22-1302(1)(a) of the Retirement Code as applied to her violates her right to substantive due process.

The City seeks summary judgment on Ms. Dailey's substantive due process claim arguing it is precluded by the Commonwealth Court's decision.[171] Ms. Dailey opposes summary judgment arguing the City's argument "relies on the entirely unsupported fiction that the property at issue here is not earned compensation to which [she] was entitled and then deprived of," failed to offer "any record support for this fiction," asserts she "offered evidentiary support to the contrary," and must be permitted to take discovery on this fact issue.[172] Ms. Dailey responds to the extent the Retirement Code withstands her constitutional challenges, there are disputed facts precluding summary judgment, relying on *Nicholas v. Pennsylvania State University*[173] and *State Farm Mutual Automobile Insurance Co. v. Campbell*.[174]

31

In *Nicholas*, our Court of Appeals explained there are two different substantive due process challenges: the validity of a legislative act, and, non-legislative state action.[175] "[A] property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are 'arbitrary, irrational, or tainted by improper motive,' ... or by means of government conduct so egregious that it 'shocks the conscience' ...."[176] When considering a challenge to a non-legislative state action, we are directed to "look, as a threshold matter, to whether the property interest being deprived is 'fundamental' under the Constitution. If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not 'fundamental,' however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process."[177] Our Court of Appeals in *Nicholas* held plaintiff's tenured public employment is not a fundamental property interest entitled to substantive due process protection; rather, it is a "wholly state-created contract right ... bear[ing] little resemblance to other rights and property interests that have been deemed fundamental under the Constitution."[178]

In *State Farm*, the Supreme Court considered whether punitive damages in a civil litigation were excessive under the Due Process Clause. It instructed the Due Process Clause of the Fourteenth Amendment "prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor" in the form of punitive damages.[179] 'Our Court of Appeals considered, and rejected, the argument Ms. Dailey makes here. In *Brace v. County of Luzerne*, Mr. Brace served as Deputy Clerk of Courts with the Office of the Clerk of Courts for Luzerne County, Pennsylvania.[180] His position required him to become a member in the Luzerne County employees' Retirement System and to contribute to its fund. He retired and began receiving retirement benefits. Two years later,

32

Mr. Brace plead guilty to "corruptly ... accept [ing] or agree[ing] to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more" while employed as the Depute Chief Clerk, a violation of federal law. After pleading guilty to the crime, the Luzerne County Retirement Board terminated Mr. Brace's retirement benefits under Pennsylvania's Forfeiture Act "explicitly list[ing] Pennsylvania state crimes that qualify as 'crime[s] related to public office or employment'" and all criminal offenses substantially the same as federal crimes.[181]

Mr. Brace sued in federal court alleging violations of substantive and procedural due process under the Fourteenth Amendment. The district court dismissed both the substantive and procedural due process claims, finding Mr. Brace "has no fundamental interest in retirement benefits that would have invoked his substantive due process rights, and also held that, even if such an interest existed, the termination of Brace's benefits did not meet the high 'shocks the conscience' standard required for Brace's substantive due process claim to succeed."[182]

Our Court of Appeals affirmed. It limited its review "only with examining whether the defendants, in terminating Brace's retirement benefits, violated his substantive and procedural due process rights."[183] As to substantive due process, as Ms. Dailey also claims, the Court of Appeals found "[e]ven if it were possible for Brace to show that he had the necessary fundamental interest in his retirement benefits ... the conduct of [Luzerne County Retirement Board] in terminating those benefits does not shock the conscience."[184] Our Court of Appeals additionally held "in reviewing Brace's case, application of the shocks-the-conscience standard prevents the Court from being cast as a retirement board of appeals—and it lucidly shows that Brace's substantive due process rights have not been violated."[185]

33

Having already concluded Ms. Dailey's participation in the Retirement System is contractual in nature, we reject her argument. The Pennsylvania Supreme Court in *Abraham* held Pennsylvania's Forfeiture Act "is triggered by an employee's breach of the public employment contract" and "[a]n employee who breaches [her] contract forfeits [her] right to deferred compensation for services rendered in the past."[186] Critically, the Pennsylvania Supreme Court held "[e]ntitlement to the compensation that is deferred, however, is not without conditions, the relevant one being that the employee not commit any of the enumerated crimes."[187]

We reject Ms. Dailey's substantive due process argument and enter judgment in favor of the City.

## F. We enter summary judgment for the City on Ms. Dailey's Takings Clause claim.

The City moves for summary judgment on Ms. Dailey's Fifth Amendment Takings Clause. Ms. Dailey alleges Section 22-1302(1)(a) of the Retirement Code as applied to her violates the Takings Clause.[188] The Takings Clause of the Fifth Amendment provides no "private property [shall] be taken for public use, without just compensation."[189]

The City argues because pension forfeiture is not a fine, but a result of a breach of Ms. Dailey's contract as a public employee, her Takings Clause necessarily fails.[190] Ms. Dailey argues the contractual "conditional precedent" is an "unsupported fiction" and immaterial to the constitutional analysis because her pension is her property.[191]

Over thirty years ago, Pennsylvania's Commonwealth Court recognized an implied contractual duty of faithfulness in a public employee's pension benefits.[192] In *Horsley*, the Commonwealth Court affirmed a decision of the Philadelphia Board of Pensions and Retirement terminating an employee's retirement benefits after the employee pleaded guilty to conspiracy to violate the Hobbs Act, a federal statute. The Commonwealth Court rejected the employee's

argument termination of his pension benefits constituted an unlawful forfeiture of property rights. Applying the Retirement Code's disqualification section,[193] the Commonwealth Court found the Retirement Board "applied express disqualification provisions to an employee whose entire employment career with the city had been subject to those provisions" and held "because the employee forfeited his pension benefits because he violated an *express* contractual duty to faithfulness, his assertion of an unlawful forfeiture must fail."[194]

Ms. Dailey's eligibility for retirement benefits is based in contract, not a property interest. Pennsylvania law recognizes the contractual nature of public employment. And the eligibility for pension benefits under the contract requires an employee not have pleaded guilty to, *inter alia*, malfeasance in office or employment. Her Takings Clause claim fails and we enter judgment in favor of the City.

At oral argument we asked Ms. Dailey if her Takings Clause claim includes the return of interest on her contributions into the Retirement System. Under the terms of Section 22-1302, if an employee is disqualified from pension benefits, she is entitled only to the "return of contribution paid into the Retirement System, without interest." Although not clearly plead or briefed, Ms. Dailey stated at oral argument her claim includes interest in her Takings Clause claim of property taken for public use without just compensation and "the property can be considered in different ways, depending upon what we're talking about."[195]

The City objected, arguing Ms. Dailey never challenged the "without interest" issue in her briefing. The City explained employees make contributions to the Retirement System and the City invests the contributions for the benefit of all employees.[196] If an employee separates from employment before retirement, her contributions are returned.[197]

35

To the extent Ms. Dailey claims the return of her contributions without interest is an unconstitutional taking, we reject it. The Retirement Code requires "[a]ll monies and funds held under all and any provisions of the Retirement System shall be invested in accordance with the regulations for the investment of similar State funds ...."[198] Money in the Retirement System "may be invested in any contracts and policies providing for stated interest guarantees ...."[199]

Actuarial assumptions to operate the Retirement System and "interest rates to be used in calculating the earnings of the reserves of the Retirement System" are adopted by the Pension Board on the advice of the actuarial consultant and the actual interest earned must be reviewed by the Pension Board at least once every five years.[200] The Retirement Code provides a formula for the amount and calculation of retirement benefits based on a percentage of average final compensation and years of service, and provides a formula for the calculation of early retirement benefits Ms. Dailey claimed.[201] But we see nothing about an individual earning interest; rather contributions of the City and the member are made into the Retirement System which the City invests and actuarily calculates the reserves necessary to maintain the system.

**III. Conclusion**

We grant the City's Motion to dismiss only as to the Pension Board and the individual defendants upon Ms. Dailey's consent. We grant summary judgment in favor of the City on Ms. Dailey's amended complaint.

_____

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Ms. Dailey filed her SUMF at ECF Doc. No. 85-3 to which the City responded at ECF Doc. No. 89-3. Mr. Dailey prepared an appendix (ECF Doc. No. 85-4) to which the City added documents (ECF Doc. No. 89-2). References to the appendix are by Bates number, for example, "1a." Ms. Daily filed her memorandum in support of her renewed Motion for partial summary judgment at ECF Doc. No. 85-1. The City's response is filed at ECF Doc. No. 89. We granted the City leave to file a supplemental memorandum, consistent with Fed. R.

Civ. P. 56(f), for entry of summary judgment in its favor. The City filed its supplemental memorandum at ECF Doc. No. 92 and Ms. Dailey responded at ECF Doc. No. 94.

[2] Dailey SUMF at ¶¶ 1, 2 (ECF Doc. No. 85-3). Under Pennsylvania statute, "[t]he judicial power of the Commonwealth shall be vested in a unified judicial system ...." 42 Pa. Cons. Stat. § 301. The Commonwealth is divided into sixty judicial districts. 42 Pa. Cons. Stat. Ann. § 901(a). The City and County of Philadelphia comprise the "First" judicial district. *Id. See also* Appendix 112a at ¶ 2 (ECF Doc. No. 89-2).

[3] *Dailey v. City of Phila. Bd. of Pensions and Ret.*, No. 2116 C.D. 2016, 2018 WL 5851780, at *1 (Pa. Commw. Ct. Nov. 9, 2018). *See also* Appendix 112a at ¶ 3 (ECF Doc. No. 89-2).

[4] Dailey SUMF at ¶ 3 (ECF Doc. No. 85-3). Philadelphia's Home Rule Charter established the City of Philadelphia Public Employees Retirement System ("Retirement System"). The City of Philadelphia Public Employees Retirement Code ("Retirement Code") governs the Retirement System. Retirement Code, Chapter 22-100, §22-101(1). The Charter established the Retirement System requiring the Board of Pensions and Retirement ("Pension Board") to prepare for "consideration and enactment" by the City Council a "comprehensive, fair and actuarially sound pension and retirement system covering all officers and employees of the City ..." except for separately maintained systems for "City policemen and firemen." Phila. Home Rule Charter, Art. VI, § 6-600. The Pension Board "shall administer the pension and retirement systems of the City and shall examine and make recommendations as to the administration of any separate pension and retirement systems to which the City makes appropriations even though such systems are incorporated." Phila. Home Rule Charter, Art. VI, Chapter 6, § 6-601. The Retirement System has different plans, including "Plan J" defined as "all current and former employees of the City ..." who are not police or fire employees and other classification of employees not relevant here. Retirement Code, Chapter 22-100, § 22-104(2).

[5] Retirement Code, Chapter 22-200, § 22-201(1).

[6] Dailey SUMF at ¶ 6 (ECF Doc. No. 85-3); Retirement Code, Chapter 22-900, § 22-902.

[7] Retirement Code, Chapter 22-100, § 22-103(1).

[8] *Id.*, Chapters 22-300, 22-900.

[9] *Id.*, Chapter 22-1300, § 22-1302.

[10] *Id.*, Chapter 22-900, § 22-903(1).

[11] Dailey SUMF at ¶ 4 (ECF Doc. No. 85-3). In her complaint, Ms. Dailey alleges she used the First Judicial District's credit card to pay off her son's debts after learning he owed large sums of money as a result of drug addiction. First Amended Complaint at ¶ 47 (ECF Doc. No. 21).

[12] Dailey SUMF at ¶ 5 (ECF Doc. No. 85-3).

[13] Dailey SUMF at ¶¶ 7-8 (ECF Doc. No. 85-3); Appendix 10a (ECF Doc. No. 85-4); 18 Pa. Cons. Stat. § 3921(a).

[14] Dailey SUMF at ¶ 9 (ECF Doc. No. 85-3); Appendix 10a (ECF Doc. No. 85-4).

[15] Dailey SUMF at ¶ 10 (ECF Doc. No. 85-3).

[16] Appendix 12a (ECF Doc. No. 85-4); Dailey SUMF at ¶ 13 (ECF Doc. No. 85-3).

[17] Appendix 12a; Dailey SUMF at ¶ 14.

[18] Retirement Code, Chapter 22, § 22-1302(1).

[19] Retirement Code, Chapter 22-1300, § 22-1302(1)(a)(.4), (.5).

[20] ECF Doc. No. 21.

[21] Appendix 111a-123a (ECF Doc. No. 89-2).

[22] Appendix 114a at ¶¶ 15- 16.

[23] Appendix 114a-115a at ¶¶ 1-2 (Conclusions of Law).

[24] Appendix 115a at ¶¶ 2-3.

[25] Appendix 115a-116a at ¶¶ 4-5 (citing Retirement Code, Chapter 22-1200, §§ 22-1201, 1202).

[26] Appendix 116a at ¶¶ 6-8.

[27] Appendix 117a at ¶ 9 and n.4.

[28] Appendix 117a-122a.

[29] Appendix 1a, 7a, 14a.

[30] Appendix 14a.

[31] Dailey SUMF at ¶¶ 17, 18 (ECF Doc. No. 85-3).

[32] To recover under § 1983, Ms. Dailey must show the City acted under color of state law to deprive her of a right secured by the Constitution. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citing *West v. Atkins*, 487 U.S. 42, 45 (1988)). The City does not contest it is a state actor. *See* ECF Doc. No. 89-2.

[33] ECF Doc. No. 21. Ms. Dailey initially sued the City of Philadelphia; the Board of Pensions; and, in their personal and official capacities, Francis Bielli, Executive Director of the Board of

Pensions; Robert Dubow, the Director of Finance and Chairman of the Board of Pensions; Robert Stagliano, Vice Chairman of the Board of Pensions; Alan Butkovitz, City Controller and Board member; and Board members Sozi Tulante, Michael DiBerardinis, Albert D'Attilio, Brian Coughlin, Veronica Pankey, and Carol Stukes-Baylor. In response to the Defendants' renewed Motion to dismiss (ECF Doc. No. 80), Ms. Dailey does not contest the dismissal of her claims against the individual defendants. *See* ECF Doc. No. 84 at 5 n.1. She additionally stated she will withdraw without prejudice her claims against the Pension Board based on the City's representation the Pension Board does not have an independent corporate existence and all claims against it must be brought against the City. *Id.* In her memorandum in support of summary judgment, Ms. Dailey represented she will withdraw without prejudice her claims against the Pension Board and limits her Motion for partial summary judgment to the City only. ECF Doc. No. 85-1 at 1 n.2. In the Order accompanying this Memorandum, we will dismiss Ms. Dailey's claims against all individual defendants and the Pension Board.

[34] ECF Doc. No. 22.

[35] *Younger v. Harris*, 401 U.S. 37 (1971).

[36] ECF Doc. No. 23-1.

[37] *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

[38] ECF Doc. No. 29.

[39] So named after the Supreme Court's decision in *England v. Louisiana State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964).

[40] *San Remo Hotel, L.P v. City and Cnty. of San Francisco, Cal.*, 545 U.S. 323, 339 (2005) (citing *England*, 375 U.S. at 419).

[41] Appendix 125a, 127a (ECF Doc. No. 89-2).

[42] ECF Doc. No. 41 at ¶ 1.

[43] Appendix 126a-130a.

[44] *Id.* at 127a-128a and n.1 citing Pennsylvania statute providing "In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions ... (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." 2 Pa. Cons. Stat. Ann. § 754.

[45] Appendix 127a-130a.

[46] ECF Doc. No. 50.

[47] ECF Doc. No. 51.

[48] *Id.* at 7.

[49] ECF Doc. No. 52 at 8-9.

[50] *Id.*

[51] ECF Doc. No. 52 at 9.

[52] Appendix 62a-65a.

[53] *Dailey v. City of Phila. Bd. of Pensions and Ret.*, No. 2116 C.D. 2016, 2018 WL 5851780 (Pa. Commw. Ct. Nov. 8, 2019); Appendix 29a-35a (ECF Doc. No. 89-2).

[54] *Dailey*, 2018 WL 5851780 at *2-*3.

[55] *Id.* at *3.

[56] 163 A.2d 475 (Pa. Commw. Ct. 2017).

[57] *Id.* at 482 (internal citations omitted).

[58] *Id.*

[59] *Dailey*, 2018 WL 5851790 at * 3.

[60] *Id.* at *3, n. 5.

[61] 68 A.3d 375 (Pa. Commw. Ct. 2013).

[62] *Id.* at 384-85.

[63] *Id.* at 385 (citing *Commonwealth v. Abraham*, 58 A.3d 42, 49 (Pa. 2012)).

[64] *Dailey*, 2018 WL 5851780, at *4-*5.

[65] *Id.*

[66] Appendix 36a.

[67] ECF Doc. No. 72.

[68] ECF Doc. No. 91.

⁶⁹ ECF Doc. No. 92.

⁷⁰ ECF Doc. No. 94.

⁷¹ Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey,* 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson,* 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris,* 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg,* 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh,* 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis,* 808 F.3d at 643 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis,* 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

⁷² ECF Doc. No. 29.

⁷³ ECF Doc. No. 29 at 5 n.11. We additionally noted a decision by the state courts on whether the First Judicial District is an "agency" under (.4) may eliminate or narrow the scope of our adjudication of constitutional claims. Because we, like the Commonwealth Court, find subsection (.5) is not void for vagueness and applies to Ms. Dailey's theft from her employer, the First Judicial District, we do not address subsection (.4).

⁷⁴ *See* ECF Doc. No. 29 applying the factors for *Pullman* abstention as directed by our Court of Appeals in *Chez Sez III Corp. v. Twp. of Union,* 945 F.2d 628 (3d Cir. 1991).

⁷⁵ *Expressions Hair Design v. Schneiderman,* ___ U.S. ___, 137 S.Ct. 1144, 1156, 197 L.Ed. 2d 442 (2017) (Sotomayor, J. concurring in the judgment).

⁷⁶ *Id.*

⁷⁷ *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1073 (3d Cir. 1990) (citations omitted).

⁷⁸ 545 U.S. 323 (2005).

⁷⁹ *Id.* at 330.

⁸⁰ *Id.*

[81] *Id.*

[82] *Id.* at 331 (internal citations omitted).

[83] *Id.*

[84] *Id.* at 334.

[85] *Id.*

[86] *Id.* at 335.

[87] *Id.* at 338.

[88] *Id.* at 340-41.

[89] *Id.* at 341.

[90] *Id.* at 338.

[91] ECF Doc. No. 96 at 4.

[92] *Id.* at 4-5.

[93] *Id.* at 6.

[94] 382 U.S. 399 (1966).

[95] *Kolender v. Lawson*, 461 U.S. 352, 356 n.4 (1983) (quoting *Wainwright v. Stone*, 313 U.S. 21, 22-23 (1973)).

[96] *Johnson v. Quattlebaum*, 664 F. App'x 290, 292 (4th Cir. 2016) (citing *Gooding v. Wilson*, 405 U.S. 518, 525 n.3 (1972)). In *Gooding*, the Supreme Court reviewed the interpretation of a statute by the Court of Appeals of Georgia "a court of statewide jurisdiction, the decisions of which are binding upon all trial courts in the absence of a conflicting decision of the Supreme Court of Georgia. Federal courts therefore follow these holdings as to Georgia law." *Gooding*, 405 U.S. at 525 n.3. The Pennsylvania Commonwealth Court is a court of statewide jurisdiction which, under *Gooding*, we follow. PA CONST. art. 5, § 4 ("The Commonwealth Court shall be a statewide court …).

[97] *Kolender*, 461 U.S. at 355.

[98] *Giaccio*, 382 U.S. at 400-01. The challenged statute allowed juries "in all cases of acquittals … [to] determine, by their verdict, whether the county, or the prosecutor, or the defendant shall pay costs …" and, if costs are assessed by the jury against the defendant, "the court in which the said

determination shall be made shall forthwith pass sentence to that effect, and order him to be committed to the jail of the county until the costs are paid ...."

[99] *Id.*

[100] *Commonwealth v. Giaccio*, 196 A.2d 189 (Pa. Super. 1964).

[101] *Commonwealth v. Giaccio*, 202 A.2d 55 (Pa. 1964).

[102] *Giaccio v. Pennsylvania*, 381 U.S. 923 (1965). "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States." 28 U.S.C. § 1257(a) (amended 1970, 1988).

[103] *Giaccio*, 382 U.S. at 403.

[104] *Id.*

[105] ECF Doc. No. 21 at ¶ 128.

[106] U.S. CONST. amend. XIV, § 1.

[107] *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

[108] *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citing *Grayned*, 408 U.S. at 108-09).

[109] *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3d Cir. 1992).

[110] *Aiello v. City of Wilmington*, 623 F.2d 845, 850 (3d Cir. 1980) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

[111] *San Filippo*, 961 F.2d at 1135 (citing *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)).

[112] *U.S. v. Mazurie*, 419 U.S. 544, 550 (1975).

[113] *Haffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014).

[114] *Id.* (quoting *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011)).

[115] *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

[116] *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) (internal quotations and citations omitted).

[117] *Id.* (quoting *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010)).

[118] *Tepper*, 163 A.2d at 482 (quoting *Bellis v. Bd. of Pensions and Ret.*, 634 A.2d 821, 825 (Pa. Commw. Ct. 1993)).

[119] *Id.* (quoting *Merlino v. Phila. Bd. of Pensions and Ret.*, 916 A.2d 1231, 1235 (Pa. Commw. Ct. 2007)).

[120] *Id.*

[121] *Id.* (quoting *Merlino*, 916 A.2d at 1235 and Black's Law Dictionary 976 (8th ed. 2004)).

[122] *Giaccio*, 382 U.S. at 403.

[123] *Id.* at 404.

[124] *Id.*

[125] *Doylestown Elec. Supply Co. v. Maryland Cas. Ins. Co.*, 942 F. Supp. 1018, 1021 (E.D. Pa. 1996) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).

[126] Appendix 116a-119a, Pension Board Conclusions of Law at ¶¶ 5, 8, 18.

[127] ECF Doc. No. 85-1 at 20 (we use the pagination assigned by the CM/ECF docketing system).

[128] Appendix 116a, Pension Board Conclusions of Law at ¶¶ 7-8, 27.

[129] ECF Doc. No. 85-1 at 19 n 10.

[130] *Id.*

[131] 1 Pa. Cons. Stat. Ann. § 1903(1).

[132] 1 Pa. Cons. Stat. Ann. § 1921(a).

[133] 1 Pa. Cons. Stat. Ann. § 1922. "The rules of statutory construction apply to ordinances as well as statutes." *Balady Farms, LLC v. Paradise Twp. Zoning Hearing Bd.*, 148 A.3d 496, 502 (Pa. Commw. Ct. 2016) (quoting *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Commw. Ct. 2015)).

[134] ECF Doc. No. 29 at 5.

[135] U.S. CONST. amend. VIII.

[136] *Timbs v. Indiana*, -- U.S. ---, 139 S.Ct. 682, 687, 203 L.Ed. 2d 11 (2019) (quoting *United States v. Bajakajian*, 524 U.S. 321 (1998)).

[137] *Bajakajian*, 524 U.S. at 327-28.

[138] 509 U.S. 602 (1993).

[139] *Id.* at 618 (footnote omitted).

[140] *Id.* at 619-22.

[141] *Id.* at 622.

[142] 524 U.S. 321 (1998).

[143] *Id.* at 334.

[144] *Id.* at 336-37.

[145] ECF Doc. No. 89 at 9-10.

[146] 68 A.3d 375 (Pa. Commw. Ct. 2013), *appeal denied* 79 A.3d 1100 (Pa. 2013).

[147] 43 P.S. § 1311-1315. Section 1313(a) of the Forfeiture Act provides "Notwithstanding any other provision of law, *no public official or public employee* nor any beneficiary designated by such public official or public employee *shall be entitled to receive any retirement or other benefit* or payment of any kind except a return of the contribution paid into any pension fund without interest, *if such public official or public employee is found guilty of a crime related to public office or public employment or pleads guilty or nolo contendere to any crime related to public office or public employment*" (emphasis added).

[148] *Scarantino*, 68 A.3d at 385.

[149] *Id.* at 385. At the time of the *Scarantino* decision, Section 1313(a) read "Notwithstanding any other provision of law, no public official or public employee nor any beneficiary designated by such public official or public employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest, *if such public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment*" (emphasis added). The Pennsylvania Assembly amended Section 1313 on March 28, 2019, reflected in note 133, *supra*.

[150] 43 P.S. § 1313(b). Section 1313(b) now reads "Such plea, verdict or order shall be deemed to be a breach of a public officer's or public employee's contract with his employer."

[151] *Scarantino*, 68 A.3d at 385.

[152] ECF Doc. No. 90 at 10.

[153] 62 A.3d 343 (Pa. 2012). The Commonwealth Court in *Scarantino* cites to *Abraham* at 58 A.2d 42 (Pa. 2012). The Supreme Court's opinion in *Abraham*, "published in the advance sheet at this citation, 58 A.3d 42, was withdrawn from the bound volume and will be republished due to a publisher's error." *See* 58 A.3d 42 (Pa. 2012). The republished cite is 62 A.3d 343 (Pa. 2012).

[154] *Abraham*, 62 A.3d at 344.

[155] *Id.* at 346.

[156] *Id.* at 348-49.

[157] *Id.* at 348.

[158] *Id.* at 349-50 (citing *Mazzo v. Bd. of Pensions and Ret. of City of Phila.*, 611 A.2d 193, 196 (Pa. 1992)).

[159] 43 P.S. § 1313(b).

[160] ECF Doc. No. 90 at 10 n.7.

[161] *Id.* at § 1313(a).

[162] *Id.* at § 1313(b) (emphasis added).

[163] Retirement Code, Chapter 22-1300, § 22-1302(1)(a)(.5).

[164] ECF Doc. No. 89-2 at 90, ¶5 n.2 (we use the pagination assigned by the CM/ECF docketing system).

[165] *Abraham*, 62 A.3d at 349 (citing 1978 Pa. H.R. Jour. Vol. 1, No. 35, p. 2431 (Statement of Representative Hayes) (emphasis added).

[166] Retirement Code, Chapter 22-900, § 22-901 providing "[e]ach year the City shall pay to the Board of Pensions and Retirement, ... the City's share of the actuarial cost of financing the Retirement System as required by the Municipal Pension Plan Funding Standard and Recover Act ... with respect to any liability thereunder of the City, as employer, to the Retirement System."

[167] Retirement Code, Chapter 22-100, § 22-105(15) (defining "employee" as "[a]ny employee, officer, or official who is paid from the Treasury of the City.")

[168] *Id.* at 11.

[169] For the same reason, we distinguish *Shoul v. Commonwealth of Pa., Dep't of Transp.*, 173 A.3d 669 (Pa. 2017) relied on by Ms. Dailey in support of her excessive fine argument. In *Shoul*, the

Pennsylvania Supreme Court considered whether a Pennsylvania statute violates Pennsylvania's constitutional right to due process and the federal and Pennsylvania constitutional prohibitions on cruel and unusual punishment. The statute established a disqualification scheme on holders of commercial driver's licenses convicted of certain motor vehicle offenses, including a lifetime disqualification for those convicted of using a motor vehicle in the commission of certain drug felonies. *Id.* at 673. The driver, Mr. Shoul, challenged the statute arguing, *inter alia*, it is punishment under *Austin*. The Pennsylvania Supreme Court agreed the challenged statute "constitutes punishment because it, at least in part, exacts retribution or deters crime." *Id.* at 682, 684-85. The Pennsylvania Supreme Court then addressed whether the statute is cruel and unusual punishment and concluded the record insufficiently developed to determine whether its application to Mr. Shoul is "grossly disproportionate to his crime ...." *Id.* at 687. *Shoul* is distinguishable because Retirement Code Section 22-1302 is not a punishment, but an issue of eligibility.

[170] *Miller v. State Employees Ret. Sys.*, 137 A.3d 674, 680-81 (Pa. Commw. Ct. 2016).

[171] ECF Doc. No. 92 at 10.

[172] ECF Doc. No. 94 at 11.

[173] 227 F.3d 133 (3d Cir. 2000).

[174] 538 U.S. 408 (2003).

[175] *Nicholas*, 227 F.3d at 139.

[176] *Id.* (citations omitted).

[177] *Id.* at 142.

[178] *Id.* at 142-43.

[179] *State Farm*, 538 U.S. at 416.

[180] 535 F. App'x 155 (3d Cir. 2013).

[181] *Id.* at 157 (internal citations omitted).

[182] *Id.* at 158.

[183] *Id.*

[184] *Id.* at 159.

[185] *Id.*

[186] *Abraham*, 62 A.3d at 349.

[187] *Id.* at 349-50.

[188] ECF Doc. No. 21.

[189] U.S. CONST. amend. V.

[190] ECF Doc. No. 92 at 12.

[191] ECF Doc. No. 94 at 9-10.

[192] *See Horsley v. Phila. Bd. of Pensions and Ret.*, 510 A.2d 841, 844 (Pa. Commw. Ct. 1986).

[193] At the time of the *Horsley* decision, the City's Retirement Code was known as the Philadelphia Municipal Retirement System Ordinance. Section 217.1 of the Ordinance contained the disqualification provision now codified in the Retirement Code as Section 22-1302(1)(a) and is "virtually identical to its predecessor provision, Section 217.1 (a) of the Municipal Retirement System Ordinance, Ordinance of December 3, 1956, as amended, ... which was in existence at the time Ms. Dailey began working for the [First Judicial District]." *Dailey*, 2018 WL 5851780, at *1 n.2. Ms. Dailey does not dispute Section 22-1302 is materially different from Section 217.1 and asserts Section 22-1302(1)(a)(.5) "was subsequently enacted as merely a continuation and codification of § 217.1(a)." *See* ECF Doc. No. 85-1 at 19 n.10 (we use the pagination assigned by the CM/ECF docketing system).

[194] *Horsley*, 510 A.2d at 564.

[195] ECF Doc. No. 96 at 37-38.

[196] *Id.* at 42-43.

[197] *Id.* at 45.

[198] Retirement Code, Chapter 22-1000, § 22-1001(1).

[199] *Id.* at § 22-1001(2).

[200] *Id.* at § 22-1002.

[201] *Id.*, Chapter 22-300, §§ 22-301(3), 303.